UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS HILL, | ) |
|         Petitioner, | ) |
| v. | ) No. 1:24-cv-01733-JPH-CSW |
| WARDEN, | ) |
|         Respondent. | ) |

**ORDER DISCUSSING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING RESPONDENT TO REPORT**

Thomas Hill's petition for a writ of habeas corpus seeks relief from his conviction and sanctions in prison disciplinary case IYC 24-03-0693. His petition raises a factual dispute that warrants further development.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass.*

1

*Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

On March 7, 2024, correctional officer L. Vah charged Mr. Hill with offense A-117, battery against a staff person, in case IYC 24-03-693. The report of conduct states:

> On 3/7/2024 at approximately 1:40am I, Officer L. Vah was requested by Sergeant T. Stanger to signal 8 North dorm for a refusing housing. Upon my arrival I witnessed Incarcerated Individual Hill, Thomas #179741 DU-B21L stationed in the classroom. I, Officer L. Vah, and Officer S. Obi were informed by the dorm sergeant that the individual needed to be escorted to his housing unit. Upon entering the classroom, we observed the individual sitting on a chair. Officer S. Obi advised I.I Hill multiple times to get up and surrender to the application of wrist restraints which he refused.
>
> Due to his passive resistance Officer S. Obi and I then secured the individual's arms with our hands and assisted him to his feet. Once he was on his feet, he proceeded to drop his weight on multiple occasions preventing us from performing the escort. Due to his active resistance Officer S. Obi and I secured the individual to the ground to gain compliance. I.I. Hill became combative and kicked me Officer L. Vah on my left knee. Officer S. Vargas activated First Responders at approximately 1:42am.
>
> Once responding staff arrived physical handling techniques were utilized to regain compliance. Once on his feet I.I. Hill continued to frustrate and resist staff efforts by unceasingly dropping his weight during the escort. Once we arrived at HSU the individual was medically evaluated and was escorted to RSH. I.I. Hill was advised he will receive a 117A conduct report.

Dkt. 17-1.

Sergeant Stanger issued an incident report the same day, in which he stated:

> On 3/7/2024 at approximately 1:42 AM, North Dorm received Incarcerated Individual Hill, Thomas 179741; D3-03U out of South

2

> Dorm. When he arrived in the dorm, he refused to go to his assigned bed (D3-04U). When I Sergeant T. Stanger asked Incarcerated Individual Hill the reason for his refusal, he stated that he is not going into D-Unit because he claimed he was beet up the last time he was in there. At that time that he became aggressive and disorderly and refused all orders given. I radioed the walk staff, Officer S. Oby and Officer L. Vah, to Signal 8 for a possible disorderly.
> Both walk officers arrived on unit and placed Incarcerated Individual Hill into a mechanical restraint with the intent to escort him to D-Unit. Due to his passive resistance Officer Vah and Officer Obi secured the individual's arms their hands and assisted him to his feet. Once he was on his feet, he proceeded to drop his weight on multiple occasions preventing us from performing the escort. Due to his active resistance Officer Vah and Officer Obi secured the individual to the ground to gain compliance. Once on the ground Incarcerated Individual Hill became combative which led to him kicking Officer Vah. Officer S. Vargas activated First Responders. Once responding staff arrived physical handling techniques were utilized to regain compliance. Once on his feet Incarcerated Individual Hill continued to frustrate and resist staff efforts by unceasingly dropped his weight during the escort.
> Once we arrived at HSU the individual was medically evaluated and was escorted to RSH where he will be placed in a RSH Cell. Because of his actions, Incarcerated Individual Hill will receive conduct for a 117A "Battery Against a Staff Person, Volunteer, Visitor or Contractor" charge. Per the DELTA System, Incarcerated Individual Hill a white male with a Class "F" Mental Health Code. He also shows no STG affiliation. All paperwork was completed at the end of this incident.

Dkt.17-2 at 3. (errors in original).

Mr. Hill received another conduct report based on his behavior at RHU on March 7, in case IYC 24-03-713, in which Mr. Hill admitted to taking drugs (buprenorphine and methamphetamine) the day before. Dkt. 17-7.

The screening officer notified Mr. Hill of the charge in IYC 24-03-693 on March 8 and provided him with copies of the report of conduct and the screening report. Dkt. 17-3. Mr. Hill pled not guilty and did not request any evidence or

3

witnesses. *Id.* Officer S. Obi provided a witness statement, which was the same in substance as the conduct report. Dkt. 17-6.

On March 18, 2024, the disciplinary hearing officer (DHO) held a hearing in case IYC 24-03-693, during which Mr. Hill stated:

> I was being from South G to North D. I was told to talk Sgt. because I was jumped. They put me inside room and saying I can't go in there cause I was going to get hurt. Didn't want to go through that again. Called signal said I was refusing housing. Pick me up and slammed me. When on stomach and started smacking against concrete. I didn't know what was going on and that I was unconscious and couldn't see. They were hitting me pretty hard. I tried wiggling away. Back up, cause I didn't know what was going on cause I was unconscious. Closed fist punching me, until they were done. I had to see medical. Head was swollen. I have grievance put in. That is under review. Open investigation. Seems like I'm a victim. Said that I kicked him, but I never kicked anybody. I don't know if I was trying to wiggle away. I was knocked out. No statement from Sgt. Stanger.

Dkt. 17-5 at 1.

The DHO considered the staff reports, Mr. Hill's statement, the staff witness statement, and the conduct report from case IYC 24-03-713. *Id.* The DHO found Mr. Hill guilty of offense A-117, battery against a staff person, and imposed the following relevant sanctions: a 180-day credit time deprivation and a one-step credit class demotion. *Id.* The DHO specifically stated:

> DHB has found you guilty, due to report conduct IYC 24-03-713, and staff witness statement. According to report, Ofc. Vah responded to North dorm situation due to I/I Hill refusing his housing unit. Multiple verbal orders were given towards I/I Hill to submit to restraints, but orders were being ignored. Ofc Obi had to apply mechanical restraints forcefully and while trying to escort I/I/ Hill towards the unit he became actively resistant. This resulted in I/I Hill needing to be assisted to the ground to help gain compliance. While on the ground. I/I Hill became combative and had kicked Ofc. Vah in his knee.

> No evidence provided that proves that I/I Hill was not resistant and hadn't committed an act of Battery Against Staff. The DHO does not believe I/I Hill was unconscious throughout this incident and I/I Hill does not describe why the staff needed to utilize force within this incident. Ofc Obi witness statement supports this charge. Conduct IYC 24-03-000713 was considered and it details that I/I Hill had used a controlled substance. The preponderance of evidence suggest I/I Hill was resistant with staff and while resisting I/I Hill had kicked a staff member. Continuance was denied, due to I/I Hill has gone through the screening process, along with I/I Hill was requested on 3/14/2024 and hadn't shown up.

*Id.* (errors in original).

Mr. Hill's appeals were denied and this habeas action followed.

### III. Analysis

Mr. Hill raises three arguments for habeas relief: 1) he was denied a witness statement from Sgt. Stanger; 2) he was denied video evidence; and 3) he did not want to enter his assigned housing because he was in fear of his life and the officers failed to protect him. Dkt. 1. The Court finds that two claims lack merit, while a third claim warrants further development through an evidentiary hearing.

#### A. Denial of Witness

Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. But due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones v. Cross*, 637 F.3d 841, 847 (7th Cir.

5

2011), and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

Mr. Hill argues that he was not allowed to obtain a witness statement from the "main witness," Sgt. Stanger. Dkt. 1 at 4. Although Mr. Hill did not request any witness statements at screening, Sgt. Stanger, did, in fact, provide his statement through an incident report. Dkt. 17-2. Sgt. Stanger's report acknowledged Mr. Hill's assertion that he did not want to go to D-Unit because he had been beaten in that unit before. *Id.* His report also affirmed, however, that Mr. Hill kicked Officer Vah. *Id.* There is nothing exculpatory in Sgt. Stanger's statement, so Mr. Hill is not entitled to relief on this claim.

### B. Failure to Protect

Mr. Hill also argues that the officers who escorted him failed to protect him when they insisted he be housed in D-unit, where he had been attacked before. This claim does not invoke due process protections. *See Hill*, 472 U.S. at 454. While a failure to protect claim may be viable in a civil rights action, it therefore is not in this habeas case. Mr. Hill is not entitled to habeas relief on this claim.

### C. Disputed Request for Video

In his second denial of evidence claim, Mr. Hill contends that he asked the DHO for a continuance to have the DHO review the video evidence. He alleges that the DHO denied his request for a continuance and refused to review video evidence, saying, "you probably deserved what happened to you so I will not review the camera on this incident." Dkt. 1 at 4.

DHO Smith denies making this statement at the hearing. Dkt. 17-12. The DHO states in his affidavit, "[t]o the best of my knowledge, Hill had not requested any witnesses and any video footage *prior to his hearing*." *Id.* (emphasis added). This statement is not responsive to Mr. Hill's claim that his request for video evidence was made at the hearing and was denied. The DHO does not dispute that Mr. Hill requested a continuance. Dkt. 17-5 at 1. The video evidence might have been exculpatory, as it is reasonable to expect that video of the incident would show whether Mr. Hill kicked Officer Vah.

There is a factual dispute as to whether Mr. Hill asked the DHO to review video of the incident. As in all habeas proceedings, a material factual dispute requires a hearing (and thus the appointment of counsel under Rule 8 of the § 2254 rules). *See Johnson v. Finnan*, 467 F.3d 693, 694 (7th Cir. 2006). The respondent could obviate the need for a hearing if the disciplinary proceedings at issue and the corresponding sanctions are vacated. Otherwise, the Court will set this matter for an evidentiary hearing on the question outlined above and appoint counsel for Mr. Hill. *See* Rule 8 of the *Rules Governing Section 2254 Cases* ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.").

### IV. Conclusion

Two of Mr. Hill's claims are denied on the merits.

The respondent has **through December 10, 2025**, to inform the Court how this action should proceed on the denial of video evidence claim. If a hearing

7

is necessary, the Court will appoint counsel, schedule the hearing, and set discovery deadlines by separate order.

**SO ORDERED.**

Date: 11/20/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

THOMAS HILL
179741
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Monika P. Talbot
INDIANA ATTORNEY GENERAL
monika.talbot@atg.in.gov